# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 21, 2015

## STATE OF TENNESSEE v. CONNIE LAVELL TATE

**Appeal from the Criminal Court for Knox County**
**No. 96507     Bobby R. McGee, Judge**

_____

### No. E2014-02098-CCA-R3-CD – Filed August 10, 2015

_____

Appellant, Connie Lavell Tate, was indicted on three alternative counts of aggravated assault, Class C felonies. The State dismissed one count prior to trial, and she was convicted of the remaining two counts. After merger, the trial court sentenced appellant to six years as a Range I, standard offender. It suspended the sentence to probation and placed appellant on supervised probation. In this appeal, appellant challenges the sufficiency of the convicting evidence. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which ROBERT L. HOLLOWAY, JR., J., joined. CAMILLE R. MCMULLEN, J., filed a separate dissenting opinion.

Joseph Liddell Kirk (on appeal) and Mitchell T. Harper (at trial), Knoxville, Tennessee, for the Appellant, Connie Lavell Tate.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Randall Eugene Nichols, District Attorney General; and Deborah H. Malone, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

This case involves a stabbing outside of a club in Knoxville. For her involvement in the offense, appellant was indicted on three counts of aggravated assault: (1) an assault that resulted in serious bodily injury to another, Tennessee Code Annotated section 39-13-102(a)(1)(A)(i); (2) an assault that caused bodily injury to another and that involved the use or display of a deadly weapon, Tennessee Code Annotated sections 39-

13-101(a)(1), -102(a)(1)(A)(iii); and (3) an assault that caused another to reasonably fear imminent bodily injury and that involved use or display of a deadly weapon, Tennessee Code Annotated sections 39-13-101(a)(2), -102(a)(1)(A)(iii).

## I. Facts

The State's first witness was the victim, Kimberly Gray, who testified that on May 21, 2010, she and her friend Antoinette Harper were at a bar called The Jazz and Blues in Knoxville. The victim did not have a knife and did not carry a handbag or a purse; Ms. Harper was paying for her drinks that night. The victim held her cellular telephone in her hand and kept her identification card in her bra. Later, Ms. Harper's cousin, Van Harper, entered the club. Subsequently, the victim encountered appellant for the first time. She learned that she and appellant were distantly related, but they had never met before. The victim recalled that when the club began to shut down around 2:30 a.m., she had consumed enough alcohol "to have a good time," or in other words, "a lot." She vaguely remembered where Ms. Harper's vehicle was parked, but when asked what she remembered next, the victim said, "That's about it. I woke up in the hospital." The doctor informed her that she had been in the intensive care unit (ICU) for eighteen days.

The victim stated that she remained in the hospital for a month after being transferred from ICU before she was released. Once at home, she stopped breathing and was admitted to the hospital again and stayed for another month. After being at home for less than a week, she returned to the hospital and remained yet another month. She said, "[A]fter that[,] I was just having surgeries after surgeries until December." The victim required staples in her head for a head injury; open heart surgery to repair damage to arteries and for transplant of artificial veins; and stitches in her stomach. She also had a stab wound in her neck and a broken leg. She suffered eleven total stab wounds.

Van Harper was the State's next witness. Mr. Harper said that he had previously been in a relationship with appellant and that they had cohabitated for about a year. He recalled seeing appellant with a knife in her possession at the club on the night in question. Mr. Harper stated that at some point during the night, both appellant and the victim asked him to go home with them and that he refused.

The State called Knoxville Police Department Investigator Charles Lee as its next witness. Investigator Lee was dispatched to the club where it was reported that someone had been stabbed. Although the victim had already been transported to the hospital, he traveled to the scene to speak with any witnesses who still remained and to ascertain the circumstances surrounding the stabbing. The evidence indicated that the altercation had occurred near the passenger side of a vehicle that was parked in a parking lot across the street from the club. He also observed a cellular telephone lying in a pool of blood beside the car.

-2-

Investigator Lee testified that as a result of a telephone call he received while at the scene, he and uniformed officers traveled to appellant's address and took her to the police department for questioning. He administered her rights, and she executed a rights waiver form. Appellant gave a videotaped statement,[1] which was played for the jury. Investigator Lee stated that because he was dealing with a situation involving a physical altercation between two people, he expected to see some type of injury on appellant's person, but she had none. Based on appellant's account that she "snatched" the knife from the victim's hand, Investigator Lee also expected appellant to have injuries on her hands, but he did not observe any. He stated that the knife was never recovered and that he was unable to locate any eyewitnesses to the assault.

On cross-examination, Investigator Lee confirmed that appellant called the police department with information about the altercation, which is how he arrived at appellant's apartment. In her statement, appellant said that there were "some words exchanged" in the club prior to the physical altercation outside. Appellant indicated that she remained inside the club as people were leaving in an attempt to avoid the victim. However, as appellant was leaving, she said that the victim approached her from the far side of a vehicle, armed with a knife, and surprised her. Appellant stated that she took the knife from the victim and stabbed the victim in self-defense.

Following this testimony, the State rested, and the defense rested without presenting proof. Upon this evidence, the jury deliberated and found appellant guilty as charged. The trial court merged the convictions, and following a sentencing hearing, sentenced appellant to six years as a Range I, standard offender. It suspended the sentence to probation and placed appellant on supervised probation.

## II. Analysis

Appellant argues that the evidence is insufficient to support her conviction of aggravated assault, citing a lack of a "complete alternative version" of the events if the jury rejected the version she had recited in her statement. The State counters that the jury was free to accept or reject appellant's version of the altercation and obviously discredited it. We agree with the State.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

_____

[1] We have attempted to view appellant's recorded statement, which was included in the appellate record. Due to the sound quality, much of it is unintelligible. However, it is clear that appellant admitted attacking the victim but claimed self-defense.

-3-

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

Through her statement, appellant asserted self-defense as an affirmative defense. Pursuant to Tennessee Code Annotated section 39-11-611(a),

> A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. . . . There is no duty to retreat before a person threatens or uses force.

*State v. Renner*, 912 S.W.2d 701, 703-04 (Tenn. 1995). The "no duty to retreat rule," also known as the "true man" doctrine, holds that "one need not retreat from the threatened attack of another even though one may safely do so. Neither must one pause and consider whether a reasonable person might think it possible to safely flee rather than to attack and disable or kill the assailant." *Id.* at 704 (citing *Brown v. United States*, 256

U.S. 335, 343 (1921)). Whether the "true man" doctrine applies in a particular case is a jury question. *Id.* "The jury determines not only whether a confrontation has occurred, but also which person was the aggressor. It also decides whether the defendant's belief in imminent danger was reasonable, whether the force used was reasonable, and whether the defendant was without fault." *Id.*

Accordingly, the jury in this case heard evidence that the victim attended the club carrying nothing except her identification and her cellular telephone. She did not have a handbag or even a wallet in her possession, and she testified that she did not possess a knife that night. The victim testified that she spoke only briefly with appellant that night. The jury also heard testimony from Mr. Harper that appellant was armed with a knife, and he provided a possible motive for the attack in that allegedly both women invited him to return to their respective homes with them. Appellant admitted that she stabbed the victim but claimed that she was attacked by the victim, disarmed her, and stabbed her in self-defense. Investigator Lee published photographs of appellant's hands to the jury showing no visible injuries, which was inconsistent with having wrenched away a knife from an aggressor. The jury, having heard the evidence that the victim did not have a knife, that appellant was armed with a knife, and that appellant was not injured while the victim was gravely injured, obviously discredited appellant's version of the events. We will not second-guess the jury's verdict or re-weigh the evidence. *Dorantes*, 331 S.W.3d at 379. Appellant is not entitled to relief on this issue.

## CONCLUSION

Based on our review of the record, the briefs of the parties, and the applicable legal authorities, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE

-5-